Corey LUCAS *v.* STATE of Arkansas

94-208                                    894 S.W.2d 891

Supreme Court of Arkansas
Opinion delivered March 13, 1995

*William R. Simpson, Jr.,* Public Defender, by: *Martha Erin O'Farrell,* Deputy Public Defender, for appellant.

*Winston Bryant,* Att'y Gen., by: *Clint Miller,* Acting Deputy Att'y Gen., for appellee.

TOM GLAZE, Justice. On May 4, 1993, at about 9:00 p.m., Corey Lucas, then fifteen years old, was standing near or alongside a car parked at the curbside in front of Lucas's home. He was talking to the driver of the car. Police officers drove by and one of the officers saw a pistol sticking out of Lucas's back, right pocket. The officers returned to where Lucas stood and identified themselves. Officers said that Lucas moved his hand to his pistol so they drew their service weapons, ordered him to raise his hands and when he refused, they instructed him to get on the ground. One of the officers then was required to physically push Lucas to the ground. They then handcuffed him and took the pistol, a loaded .38 revolver, from his back pocket.

The state filed a petition in juvenile court to adjudicate Lucas a delinquent because he was a juvenile found in possession of a handgun in violation of Ark. Code Ann. § 5-73-119(a)(1)(A) (Repl. 1993), a class A misdemeanor. At trial, Lucas raised the affirmative defense provided under § 5-73-119(c)(1) that, although he might be found a juvenile in possession of a handgun, he was on property in which he had a possessory interest and therefore was not guilty of the handgun charge.[1] The juvenile court found that, at the time of the offense, Lucas was in the yard on property where he lived with his mother and in which she had a possessory or proprietary interest. However, the trial court rejected

---

[1] Section 5-73-119(c)(1) reads as follows: (c) It is a defense to prosecution under this section that at the time of the act of possessing a handgun:

(1) The person is in his own dwelling or place of business or on property in which he has a possessory or proprietary interest; or . . . .

Lucas's argument that he was entitled to the defense provided under § 5-73-119(c)(1), reasoning that, although Lucas may have had some possessory interest in his mother's property, such interest was not intended to serve to cloak him with immunity from committing the handgun offense. On November 3, 1993, the juvenile court declared Lucas a delinquent, ordered him to nine months' probation and directed him to participate in the Diversion program. Lucas duly appealed from the trial court's order, but no stay appears to have been entered during the pendency of this appeal.

We first address the juvenile court's jurisdiction of this case. Under Ark. Code Ann. § 9-27-306(a)(1), the juvenile court has exclusive original jurisdiction of proceedings in which a juvenile is alleged to be delinquent or dependent neglect. A juvenile is defined by the Juvenile Code to be an individual under the age of eighteen years, whether married or single. Ark. Code Ann. § 9-27-303(1)(A) (Repl. 1993). In 1993, when Lucas was charged under § 5-73-119, § 9-27-303(11) of the Code defined "delinquent juvenile," in pertinent part, as meaning any juvenile ten years or older who has committed an unlawful act which, if such act had been committed by an adult, would subject that adult to prosecution for a felony, misdemeanor, or violation under the criminal laws of the state.

It is suggested that the juvenile court in this matter did not have jurisdiction of Lucas because, unless he had committed a criminal offense for which an adult could have been prosecuted, he could not be declared a delinquent as defined in § 9-27-303(11). The argument then is made that, under Arkansas law, an adult cannot be prosecuted for the mere possession of a handgun absent some other factor, thus, Lucas cannot be found a delinquent for such an offense.

Regardless of an adult's immunity from prosecution for the mere possession of a handgun, the General Assembly has clearly made the possession of a handgun a misdemeanor offense for juveniles. Under the plain language of Ark. Code Ann. § 9-27-305 (Repl. 1993), any juvenile may be subjected to the care, custody, control, and jurisdiction of the juvenile court. If this statute is not clear enough in placing jurisdiction with the juvenile court when § 5-73-119 is violated, one need only look to

other statutory provisions enacted by the General Assembly to determine its intent in such matters.

Besides its declared general jurisdiction pronouncement in § 9-27-305, the General Assembly has made it clear that juvenile court has exclusive jurisdiction of all the offenses charged against a juvenile, with the exception of those listed in Ark. Code Ann. § 9-27-318(b)(1) (Repl. 1993). *See Banks* v. *State*, 306 Ark. 273, 813 S.W.2d 257 (1991). Suffice it to say, the mere possession of a handgun by a juvenile is not one of those crimes listed permitting the state the discretion to file charges in circuit rather than juvenile court.[2] In addition, the General Assembly, by enacting Act 36 of 1994 Second Extraordinary Session, amended the Code definition of "delinquent juvenile" to include a juvenile who possesses a handgun, thus again reflecting its intent that juvenile, not circuit, court is the forum to decide juvenile cases where juveniles are charged with possession of handgun violations under § 5-73-119(a)(1)(A).

■■ Having concluded the juvenile court had jurisdiction of this cause, we now turn to the merits of the case. As discussed above, Lucas's argument simply relies on his affirmative defense that, although he possessed a handgun while seen in his mother's front yard, he had a possessory interest in the property thereby nullifying any guilt of the handgun charge. He cites Black's Law Dictionary, Fifth Edition, and its definition of "possessory interest" which defines it to mean "a right to possess property by virtue of an interest created in the property though it need not be accompanied by title." That definition further relates that "a possessory interest in land exists in a person who has a relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so as to exclude other members of society in general from any present occupation of the land." In sum, Lucas argues that, in residing on his mother's property and maintaining access to it at all times, he has a certain degree of control over the property, bringing him within the "possessory interest" language used and intended in the affirmative defense provided in § 5-73-119(c)(1). Citing *Amason* v. *City of El Dorado*, 281 Ark. 50, 661 S.W.2d 364 (1983), Lucas further

---

[2]We note that of the nine offenses, § 9-27-318(b)(1) does include a fourteen or fifteen year old's possession of a handgun when on school property.

contends that, if the General Assembly had meant to limit the affirmative defense language to apply only when a parent permitted or had knowledge their minor had a handgun, it could have easily so provided.

In this appeal, the state generally ignores the juvenile court's rationale for rejecting Lucas's reliance on the affirmative defense language, and instead argues Lucas was not entitled to such defense because this court should not interpret the "possessory interest" language in § 5-73-119(c)(1) as broadly as Lucas argues. The state cites a number of old Arkansas cases in support of its view. *See Lemmons* v. *State*, 56 Ark. 559, 20 S.W. 404 (1892); *Jones* v. *State*. 55 Ark. 186, 17 S.W. 719 (1891). Interestingly, the *Lemmons* case involved a defendant who was charged with unlawfully carrying a weapon when he was on some woodland belonging to his father. Lemmons was unmarried and living with his father, and he contended that he could lawfully carry a pistol on his (or his father's) premises. However, the court determined that, while Lemmons lived with his father, he was a mere licensee when entering upon his father's adjacent wooded tract. As Lemmons did not show any interest in or control over the woodland, the court held he was not entitled to the statutory exception permitting a person to carry a weapon upon his own premises.[3] Although unnecessary to the court's ultimate decision reached in *Lemmons*, the state conceded that, as an inmate of his father's house, Lemmons could have lawfully carried a pistol on the grounds or curtilage habitually used in immediate connection with the dwelling house. In this respect, the *Lemmons* decision would seem to support Lucas's argument here rather than the one urged by the state.

■ The state asks us to place special emphasis on the term "dwelling" set out in the affirmative defense language and suggests that defense should be limited only to when a juvenile is in the house or other structure in which a person lives. However, such an interpretation wholly ignores the disjunctive phraseology contained in § 5-73-119(c)(1). In this respect, the provision provides that it is a defense to prosecution under § 5-73-119

---

[3]The statute involved was later compiled in Ark. Stat. Ann. § 41-4501 (Repl. 1964) which, among other things, made it unlawful for any person to carry certain weapons except upon his premises.

that, at the time of the act of possessing a handgun, the person (juvenile) is in his own dwelling *or* place of business *or* property in which he has a possessory or proprietary interest. It appears abundantly clear that, in enacting § 5-73-119(c)(1), the General Assembly availed the foregoing affirmative defense to all persons, including juveniles, who violated the handgun crimes defined in the statute.[4]

In conclusion, we take special note of the state's speculative comment that, in enacting § 5-73-119, the General Assembly did not intend to bestow on minors the right to hang out in their yards with .38 revolvers stuck in their back pockets. That, of course, seems sensible. However, we would also think that the General Assembly would not have intended for juveniles to possess loaded pistols inside dwellings where they reside; nonetheless, the state concedes, by its argument, § 5-73-119 allows that to happen as well. In short, we find it difficult to know exactly what the General Assembly intended by wording § 5-73-119, and § 5-73-119(c)(1) in particular, as it did. If the General Assembly mistakenly availed the affirmative defense in § 5-73-119(c)(1) to juveniles when it intended it to apply only to adults, it can quickly correct that error through remedial legislation.

As we previously mentioned, Lucas obtained no stay of the trial court's order pending this appeal, so it may be he has completed his probationary period. Nonetheless, we reverse and dismiss.

---

[4]*See* § 5-73-119(a)(1)(A) (no person under the age of eighteen years shall possess a handgun); (2)(A) (no person shall possess a handgun upon the public property of the public schools, on a school bus or at a designated bus stop); (3)(A) (no person shall possess a handgun upon the property of the publicly supported institutions of higher education or on or about his person, in a vehicle occupied by him or otherwise available for use with a purpose to employ it as a weapon against a person). Other affirmative defenses provided in § 5-73-119, not relevant here, are set out in provisions (c)(2) through (9).